IN THE MISSOURI COURT OF APPEALS
 WESTERN DISTRICT
IN RE: S.H.P. and A.L.P., )
 )
 Juveniles, )
 )
A.S., )
 )
 Appellant, )
 )
L.M., )
 Respondent, )
 )
v. ) WD84181
 )
N.B., ) Opinion filed: November 16, 2021
 )
 Defendant, )
 )
C.P., )
 )
 Defendant. )

APPEAL FROM THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
 THE HONORABLE JALILAH OTTO, JUDGE

 Division One: W. Douglas Thomson, Presiding Judge,
 Alok Ahuja, Judge and Karen King Mitchell, Judge

 A.S. appeals the judgment of the Jackson County Circuit Court denying her

petition for adoption of the minor children and granting L.M.’s petition for adoption.

A.S. raises three points on appeal. In her first point, A.S. argues that the trial court
erred in evaluating the children’s best interests according to the statutory factors

provided in Missouri’s child custody statute. In her second point, A.S. contends that

if she is incorrect in her first point’s assertion, then the trial court erred in not

addressing all of the best-interest factors in the child custody statute. In her third

point, A.S. argues that the trial court abused its discretion in refusing to allow

evidence regarding the children’s preferences as to their custodian. We affirm.

 Factual and Procedural History

 In approximately 2001 or 2002, A.S. and L.M. met and became romantically

involved. S.P. and A.P. are twin girls born on June 9, 2009. A.S. and L.M. learned of

S.P. and A.P. when the girls were 18 months old, about December 9, 2010. With the

permission of the biological mother, the children began living with A.S. and L.M. on

November 23, 2011. Two months later, A.S. and L.M. were granted joint letters of

guardianship over the children by the Circuit Court of Buchanan County. During all

times relevant, A.S. was employed as a school resource officer for the City of

Independence Police Department and L.M. was employed by the Air Force Air

National Guard.

 A.S., L.M., and the children resided together in North Kansas City until A.S.

and L.M.’s relationship ended in 2013. L.M. thereafter continued to reside in North

Kansas City and A.S. moved to Blue Springs, Missouri. Beginning in 2014, the

children resided primarily with A.S. due to A.S.’s more flexible work schedule.

During this time, the children spent every other weekend with L.M., as well as two

days a week. The children’s schedule of two days a week and every other weekend

 2
with L.M. continued up to the time of trial. Since 2014, A.S. moved residences twice

and with each move, L.M. moved closer to A.S. in order to maintain continuity for the

children. L.M. and A.S. lived within two miles of each other at the time of trial.

 In 2015, A.S. and L.M.’s relationship as co-guardians began to deteriorate.

This coincided with A.S. meeting and starting a romantic relationship with her

present Wife.1 In 2016, A.S. moved with Wife and Wife’s son, who is 17 months

younger than the children and two years behind them in school.

 A.S. and L.M. shared in the expenses of the children since the co-guardianship

was established in 2013. Until the filing of the competing petitions for adoption, L.M.

had money deducted from her military pay and paid directly to A.S. for support of the

children. L.M. also provided A.S. additional money for the children’s necessaries,

such as clothing and funds for school and sports. After the competing adoption

actions were initiated, A.S. no longer wanted financial assistance from L.M.

 On April 9, 2019, A.S. filed her petition for adoption of the children. On June

13, 2019, L.M. filed her competing petition for adoption of the children. The trial

court thereafter consolidated the two adoption cases. On February 27, 2020, at a pre-

trial case management conference, the guardian ad litem (“GAL”) provided his report

to the court, noting that he met with both children at A.S.’s residence as well as at

L.M.’s residence. GAL reported that he met with each of the children’s teachers, their

school counselor, and their special education teacher. GAL further reported that he

 1
 L.M., A.S., and Wife are females. The parties’ gender is not material to our analysis. This
case requires us to analyze best interest factors applicable to adoption proceedings, an issue that is
gender-neutral.

 3
reviewed the children’s school records and therapist notes as well as observed the

interactions of A.S. and L.M. at mediation. GAL reported no negative characteristics

as to either A.S. or L.M., outside of their toxic relationship with one another, believing

both were suitable adoptive parents.

 On March 13, 2020, trial began on the parties’ competing petitions for

adoption.2 At trial, substantial evidence was presented that both A.S. and L.M. are

heavily involved in the children’s lives. For instance, both A.S. and L.M. meet with

the children’s teachers on “meet the teacher night” as well as for parent-teacher

conferences. A.S. and L.M. have each taken the children to visit their extended

family. L.M. regularly involves the children in community and church activities.

L.M.’s pastor testified as to his observations of L.M.’s relationship with the children.

He testified that he had seen L.M. and the children together over 100 times and L.M.

was attentive to the children’s different needs and overall is a good parent.

 At the close of evidence, GAL gave his oral recommendation to the court that

L.M.’s petition for adoption be granted. He informed the court that, although “[i]t’s

obvious that both petitioners very much love the girls and are trying to do what they

think is in the best interest of the girls,” his decision was based on the testimony of

both A.S. and L.M., and his belief that L.M. was more likely to maintain a

relationship between the girls and A.S, as opposed to vice versa. On September 7,

2020, the family court commissioner issued her findings and recommendations,

 2
 Notably, March 13, 2020, was the final day of in-person proceedings before they were
suspended by Administrative Order 2020-053 issued in response to the COVID-19 pandemic. A.S.
presented her entire case in person. On June 5, 2020, the trial resumed via WebEx video conferencing,
beginning with L.M.’s presentation of evidence.

 4
concluding that it was in the best interests of the children that L.M.’s petition for

adoption be granted and that A.S.’s adoption petition be denied.3 The commissioner’s

best-interest determination utilized some of the factors identified in Section

452.375.2.4 The commissioner’s findings and recommendations were adopted as the

circuit court’s final judgment on September 8, 2020, and was entered on September

28, 2020.

 On October 5, 2020, A.S. filed her motion to set aside judgment, for new trial

and/or for rehearing. The trial court entered its order denying A.S.’s motion on

October 22, 2020. A.S. appeals.

 Standard of Review

 “[T]he paramount goal in an adoption proceeding is the best interests of the

child.” In re F.C., 274 S.W.3d 478, 482 (Mo. App. S.D. 2008) (quoting In re C.D.G.,

108 S.W.3d 669, 674 (Mo. App. W.D. 2002)). “We will affirm the circuit court’s

judgment in an adoption proceeding unless there is no substantial evidence to support

it, it is against the weight of the evidence, or it erroneously declares or applies the

law.” In re DeBrodie, 452 S.W.3d 644, 646 (Mo. App. W.D. 2014) (citing Murphy v.

 3 The guardian ad litem suggested to the commissioner that one available option in response

to A.S. and L.M.’s concurrent adoption petitions would be for the court to grant both petitions, and
then specify the manner in which they would exercise their co-parental rights in a parenting plan. On
appeal, A.S. does not argue that the circuit court erred by failing to consider granting both petitions,
or by failing to order that both petitions be granted; her arguments instead contends that her adoption
petition should have been granted to the exclusion of L.M.’s petition. Our opinion should not be read
as addressing the question whether the circuit court had the authority to grant both adoption petitions,
and if so, how the parties’ respective parental rights would then be determined.
 4
 In applying some Section 452.375.2 best-interest factors, the trial court recognized that
“[a]lthough this is a 453 adoption action, the result of termination or modifying a co-guardianship is
also at issue before the court. In determining the best interest of children, Missouri courts often turn
to statutory factors enumerated in Missouri Revised Statute 452.375.2.”

 5
Carron, 536 S.W.2d 30, 32 (Mo. banc 1976)). “Generally, we will defer to the trial

court’s exercise of its discretion, unless that discretion is abused.” In re C.D.G., 108

S.W.3d at 674. “An abuse of discretion may be found only when the trial court’s

decision ‘is clearly against the logic of the circumstances then before the court and is

so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of

careful consideration.’” Id. (quoting Waisblum v. Waisblum, 968 S.W.2d 753, 755 (Mo.

App. W.D. 1998)).

 “We defer to the trial court’s determinations of witness credibility and factual

issues.” In re K.M.W., 516 S.W.3d 375, 381 (Mo. App. S.D. 2017) (citing In re K.K.J.,

984 S.W.2d 548, 552 (Mo. App. S.D. 1999)). “All facts and the reasonable inferences

that can be drawn therefrom are examined in the light most favorable to the trial

court’s judgment.” Id. (citing In re C.J.G., 75 S.W.3d 794, 797 (Mo. App. W.D. 2002)).

“All contrary evidence and inferences are disregarded.” Id. (citing In re F.C., 274

S.W.3d at 482).

 Analysis

 Point I

 In her first point on appeal, A.S. argues that the trial court erred in “fail[ing]

to apply Missouri’s adoption statute in determining the best interests of the child”

and “instead applied Missouri’s child custody statute to the adoption proceedings” by

evaluating “the children’s best interests according to the statutory factors reserved

for ‘child custody proceeding[s]’ as defined by Section 452.375.”5

 5
 All references to Sections or chapters are to the Revised Statutes of Missouri (2018), unless
otherwise indicated.

 6
 Preliminarily, we must address L.M.’s contention that A.S. failed to preserve

this argument for appellate review. “Appellate courts are merely courts of review for

trial errors, and there can be no review of a matter which has not been presented to

or expressly decided by the trial court. This is so by court rule, statute, and

controlling case law.” L.J.H. v. M.H., 604 S.W.3d 883, 888 (Mo. App. W.D. 2020)

(quoting In the Interest of I.K.H., 566 S.W.3d 629, 632 (Mo. App. S.D. 2018)). Rule

78.096 requires a party, “at the time the ruling or order of the court is made or sought,

[to make] known to the court the action that the party desires the court to take or

objections to the action of the court and grounds therefor.” “Failure to do so precludes

a party from obtaining appellate review of error in the trial court’s ruling or order.”

L.J.H. v. M.H., 604 S.W.3d at 888 (quoting Brown v. Brown, 423 S.W.3d 784, 787 (Mo.

banc 2014)).

 In her motion to set aside the judgment, A.S. alleged that the trial court

considered factors which mirror Section 452.375.2 child custody factors, but did not

consider factor 452.375.2(h), the “wishes of the children as to the children’s

custodian,” and denied testimony of the children’s wishes. In her point, A.S. argues

that this claim in her motion preserved her argument now on appeal, that the trial

court erred in “fail[ing] to apply Missouri’s adoption statute in determining the best

interests of the children” and “instead applied Missouri’s child custody statute to the

adoption proceedings.” We disagree. Said another way, the contention in A.S.’s

motion was that in applying the Section 452.375.2 factors the trial court failed to

 6
 All Rule references are to the Missouri Supreme Court Rules (2018), unless otherwise
indicated.

 7
apply one such factor, but in her point on appeal A.S. asserts that the trial court

should not have applied any of said factors. The assertion made in A.S.’s trial motion

is diametrically opposed to the assertion made in her point on appeal and preserves

nothing.

 A.S. also directs us to Rule 78.07, which provides that in cases tried without a

jury, “neither a motion for a new trial nor a motion to amend the judgment or opinion

is necessary to preserve any matter for appellate review if the matter was previously

presented to the trial court.” Rule 78.07(b) (emphasis added). However, “[e]ven in a

court-tried case, where a post-trial motion is not necessary to preserve an otherwise

properly raised issue for appellate review, the appellant must make some effort to

bring the alleged error to the trial court’s attention.” L.J.H. v. M.H., 604 S.W.3d at

889 (quoting Heck v. Heck, 318 S.W.3d 760, 767 (Mo. App. W.D. 2010)). “With only

rare exceptions, an appellate court will not convict a trial court of error on an issue

that was never presented to the trial court for its consideration.” Id.

 In arguing that the alleged error was raised at trial and, therefore, Rule 78.07

should come into play, A.S. relies solely on her attorney’s sustained objection in

response to opposing counsel questioning of A.S. as to whether a parenting plan was

in the best interests of the children:

 Your Honor, I understand . . . what [opposing counsel] is getting at, but
 at this point I’m going to object. There’s no legal – I guess institution of
 a parenting plan for an adoption, I don’t think that that’s at issue right
 now. I think we’re going beyond the scope of the petition, the scope of
 this Court’s inquiry.

 8
 The sustained objection lodged by A.S.’s attorney to the presence of a parenting

plan in an adoption proceeding does not preserve her appellate argument that the

court erred in applying Section 452.375 factors to the proceedings.

 Having failed to assert her objection during the proceedings and failed to

otherwise raise her contention in a post-trial motion, A.S. cannot raise the issue for

the first time on appeal to this Court. In the Interest of G.M.G., 525 S.W.3d 162, 165

(Mo. App. W.D. 2017) (“In general, where there is no pleading or argument in the

record concerning the issue presented on appeal and the issue is raised for the first

time on appeal, it has not been preserved for review.”). Thus, A.S.’s first point is not

preserved for appellate review and is denied.

 Point II

 In her second point on appeal, A.S. argues that the trial court misapplied the

law in determining that adoption of the children by L.M. was in the children’s best

interests because “assuming the court properly applied Missouri’s child custody

statute [Section 452.375] to determine the best interests of the children in these

adoption proceedings, the court misapplied the law; in that the court provided only

conclusory statements regarding the [Section 452.375.2] best-interest factors, failed

to sufficiently detail those factors the court considered particularly relevant to its

custody determination, and failed to include specific findings of fact required to

provide for meaningful appellate review.”7 In sum, this point is the antithesis of her

 7
 As a subpart of this argument, A.S. argues that the “circuit court’s abject refusal to consider
the children’s wishes in accordance with [Section] 452.375.2(8) was a misapplication of the law and
alone warrants reversal[.]” A.S., however, did not include an allegation of the trial court’s failure to
consider the children’s wishes as to their custodian in her point. Rather, A.S. merely contends that

 9
first point. Here, A.S. suggests that if we do not agree with her first point, then

alternatively we should find “the trial court misapplied the law by failing to make the

required statutory findings regarding the children’s best interests under Section

452.375.2.”

 The argument of A.S. is misguided in that she asserts that the constructs of

Section 452.375 apply to Chapter 453 adoptions. Section 452.375.2 sets forth factors

which must be considered and upon which findings of fact must be made in cases

where custody rights, and not adoption of the child, is being determined by the trial

court. “[A]n adoption proceeding is not a child custody determination wherein

competing custodial rights to a child are weighed and determined by the court.

Instead, an adoption proceeding requires a court to determine whether the creation

of a parent-child relationship is in the best interests of a child.” In re Adoption of

C.T.P., 452 S.W.3d 705, 716 (Mo. App. W.D. 2014) (internal citations omitted).

 It follows, then, that the trial court in an adoption case is not required to follow

the mandatory requirements of Section 452.375, such as considering specific factors

and making required findings of facts on each such factor, as A.S. asserts. Indeed,

“[t]he potential factors to be considered in an adoption proceeding are ‘legion’ such

that it is impossible to catalogue all that may be involved or to assign a degree of

weight to specific favorable and unfavorable factors, much less identify any single

the court’s judgment was substantively deficient regarding its findings as to the children’s wishes,
“assuming the court properly applied Missouri’s child custody statute [Section 452.375].” “We do not
consider an argument not preserved in the Point Relied On.” Frazier v. City of Kan. City, 467 S.W.3d
327, 340 (Mo. App. W.D. 2015) (citing Bellemere v. Cable-Dahmer Chevrolet, Inc., 423 S.W.3d 267, 273
(Mo. App. W.D. 2013)).

 10
factor as absolute.” In re M.N.V., ED108888, 2021 WL 2931299, at *4 (Mo. App. E.D.

July 13, 2021) (quoting Interest of L.W.F., 818 S.W.2d 727, 734 (Mo. App. S.D. 1991)).

 There are innumerable factors that may be considered in determining
 whether an adoptive placement is in the child’s best interests. With the
 possible exception of a strong negative factor, no one factor is
 determinative of the issue. As such, the best-interests analysis is very
 fact-intensive and may turn on very subtle factors.

In re C.D.G., 108 S.W.3d at 677 (internal citations omitted). “However, every inquiry

should be guided by the paramount consideration of every adoption proceeding: the

best interest of the child.” In re M.N.V., ED108888, 2021 WL 2931299, at *4 (Mo.

App. E.D. July 13, 2021). “[T]he primary goal in adoption cases is the best interests

of the child.” In re C.D.G., 108 S.W.3d at 677 (internal citations omitted).

 Here, to aid its best-interest assessment, the trial court merely borrowed some

of the listed factors found in Section 452.375.2.8 We cannot find fault with the trial

court in the utilization of such a readily available list of factors. Utilizing some of the

enumerated factors, however, does not somehow cast upon the trial court all the

requirements of Section 452.375.

 8 Utilizing some, but not all, of the 452.375 custody factors is entirely appropriate in an
adoption proceeding, as some, but not all, would bear consideration in an adoption. Here, because of
the case-specific facts involving co-guardians who co-parented the children in two, distinct households
for years, the court found significant that L.M. recognized the need for the children to maintain a
relationship with co-guardian A.S and those in her household. Notably, these factors were considered
when determining which of the co-guardians should be the adoptive parent, not when considering
whether the children should remain with a natural parent rather than being adopted at all, or which
prospective adoptive parent would give a natural parent time with the children. “[A]n adoption
proceeding is not a child custody determination wherein competing custodial rights to a child are
weighed and determined by the court. Instead, an adoption proceeding requires a court to determine
whether the creation of a parent-child relationship is in the best interests of the child.” In re Adoption
of C.T.P., 452 S.W.3d 705, 716 (Mo. App. W.D. 2014). Once the adoption is complete, a person may
seek to obtain third-party child custody and visitation determinations authorized by law. Id. at 717.

 11
 Here, the trial court did not misapply Section 452.375 by not applying the

Section 452.375 procedure to this adoption proceeding; it was simply not required to

do so. Rather, the trial court utilized its sound discretion in determining the best

interests of the children and utilized some factors listed in Section 452.375 in doing

so. Specifically, the trial court found L.M.’s “demeanor and actions throughout this

case [to be] in the minor children’s best interest.” The court found that L.M.

recognized the need for the children to maintain a relationship with those who have

been important to them and that the children’s interests should be paramount. L.M.

moved twice to be in close proximity to the children after A.S. relocated, and she now

lives within two miles of the children’s current home with A.S. Accordingly, any

transition to her home will be relatively seamless as the children will remain in the

same school district, they will remain a part of the same community, and they will be

able to maintain relationships with friends including A.S.’s step-son. To that extent,

L.M. has demonstrated that she is willing to make sacrifices for the benefit of the

children and will provide love and affection towards them. Further, L.M. ensures the

children are frequently involved in church and community activities. Notably, “[n]o

evidence [was] adduced that [L.M.] made any parenting decisions which were

detrimental or harmful to the children,” but found “that A.S. failed to place the

children’s needs and wishes above her own.” See In re C.D.G., 108 S.W.3d at 677.

 The trial court did not misapply the law in determining that granting L.M.’s

petition for adoption was in the children’s best interest. Point II is denied.9

 9 To the extent A.S.’s second Point challenges the circuit court’s failure to make specific factual

findings in its judgment, or the specificity of the findings made in the judgment, A.S. was obligated to

 12
 Point III

 A.S.’s third point reads in its entirety:

 The circuit court erred in denying A.S.’s Petition for Adoption and
 granting L.M.’s competing Petition, because the court abused its
 discretion in that the court refused to permit introduction of testimony
 and documentary evidence regarding the children’s preferences as to
 their custodian, the children’s strong bond with A.S., and the children’s
 lack of bond with L.M.; which ultimately resulted in a Judgment that
 was clearly against the logic of the circumstances and so arbitrary and
 unreasonable as to shock the sense of justice and indicate a lack of
 careful consideration.

However, although her point focused on the trial court’s alleged error in refusing to

permit evidence of the children’s preferences as to their adoptive parent, A.S.’s

argument does not address this issue.

 In her argument, A.S. cites Section 453.02510 and quotes extensively from In

Int. of J.L.H., 647 S.W.2d 852, 861 (Mo. App. W.D. 1983), regarding a guardian ad

litem’s duties in an adoption case. Absent these cited authorities, A.S. provides no

legal analysis or discussion of the facts and fails to otherwise develop or advance any

legal reasoning. Pursuant to Rule 84.04(e), the brief must contain an argument

section that discusses the point relied on. “Points that are not developed in the

argument are deemed to be abandoned.” Wallace v. Frazier, 546 S.W.3d 624, 628

(Mo. App. W.D. 2018) (citing Kim v. Kim, 431 S.W.3d 524, 525 (Mo. App. W.D. 2014)).

“To develop a point relied on, the ‘argument should show how the principles of the

file a motion to amend the judgment under Rule 78.07(c) to give the circuit court an opportunity to
correct any deficiencies, and to preserve the issue for appellate review. See, e.g., Taylor v. Francis,
620 S.W.3d 308, 312 (Mo. App. W.D. 2021); T.J.W. v. K.T., 614 S.W.3d 637, 641-42 (Mo. App. S.D.
2020).
 10
 A.S. cites Section 453.025 merely for the proposition that “a Guardian ad Litem is required
to ‘[a]scertain the child’s wishes, feelings and attitudes regarding the adoption by interviewing persons
with knowledge of the child, and if appropriate, to meet with the child.’”

 13
law and the facts of the case interact.” Id. “[A]n appellant is required to develop the

issue raised in the point relied on in the argument portion of the brief. If a party does

not support contentions with relevant authority or argument beyond conclusory

statements, the point is deemed abandoned.” Beauchamp v. Monarch Fire Prot. Dist.,

471 S.W.3d 805, 810 n.7 (Mo. App. E.D. 2015) (internal citation omitted).

 Generally, as a matter of discretion, we will review on the merits where

disposition is not hampered by rule violations, but we will do so only if the argument

is readily understandable. Wallace v. Frazier, 546 S.W.3d at 628. Here, we find A.S.’s

brief on this point to be deficient such that we cannot conduct a thorough review of

her point without becoming an advocate for her. Point III is dismissed.11

 Conclusion

 The judgment of the circuit court is affirmed.12

 __________________________________________
 W. DOUGLAS THOMSON, JUDGE
All concur.

 A.S.’s third point on appeal has further violated Rule 84.04(e) by failing to include a “concise
 11

statement describing whether the error was preserved for appellate review,” and “if so, how it was
preserved[.]”

 12
 Respondent’s motion for attorney’s fees on appeal is denied.

 14