

# SUPREME COURT OF MISSOURI
## en banc

| | | |
|---|---|---|
| NEIL DESAI, M.D., ET AL., | ) ) ) | *Opinion issued June 25, 2019* |
| Respondents, | ) ) | |
| v. | ) ) | No. SC97361 |
| SENECA SPECIALTY INSURANCE COMPANY, | ) ) ) | |
| Appellant. | ) ) ) | |

### APPEAL FROM THE CIRCUIT COURT OF JACKSON COUNTY
**The Honorable James Francis Kanatzar, Judge**

Seneca Specialty Insurance Company appeals the circuit court's overruling of its motions to intervene and to set aside judgment. Seneca sought to intervene in a lawsuit filed by Dr. Neil Desai and Heta Desai against Garcia Empire, LLC, after the Desais and Garcia Empire entered into a contract pursuant to section 537.065, RSMo 2016. In 2017, the legislature repealed that statute and enacted an amended section 537.065, RSMo Supp. 2017. The amendment was effective after the case was tried and submitted but prior to the circuit court's entry of judgment. The amended statute continued to permit the same contracts as provided in the 2016 statute but included additional requirements that an insurer be provided written notice and the opportunity to intervene. Seneca

claims it was denied both additional rights and, as a result, the circuit court erred in entering judgment. Because the Desais and Garcia Empire entered into a contract prior to the effective date of the amended statute, the circuit court did not err in overruling Seneca's motions to intervene and to set aside the judgment. The judgment is affirmed.

## Background

A Garcia Empire employee broke Dr. Desai's arm on Garcia Empire's property. As a result, the Desais sued Garcia Empire for damages. Garcia Empire had a commercial general liability policy issued by Seneca. Garcia Empire advised Seneca of the lawsuit, and Seneca offered to defend Garcia Empire subject to a reservation of rights. Garcia Empire declined.

The Desais and Garcia Empire entered into a section 537.065 contract[1] in November 2016, in which the Desais agreed that, in the event of a judgment against

---

[1] The statute in effect when the Desais and Garcia Empire entered into the contract provided:

> Any person having an unliquidated claim for damages against a tort-feasor, on account of bodily injuries or death, may enter into a contract with such tort-feasor or any insurer in his behalf or both, whereby, in consideration of the payment of a specified amount, the person asserting the claim agrees that in the event of a judgment against the tort-feasor, neither he nor any person, firm or corporation claiming by or through him will levy execution, by garnishment or as otherwise provided by law, except against the specific assets listed in the contract and except against any insurer which insures the legal liability of the tort-feasor for such damage and which insurer is not excepted from execution, garnishment or other legal procedure by such contract. Execution or garnishment proceedings in aid thereof shall lie only as to assets of the tort-feasor specifically mentioned in the contract or the insurer or insurers not excluded in such contract. Such contract, when properly acknowledged by the parties thereto, may be recorded in the office of the recorder of deeds in any county where a judgment may be rendered, or in the county of the residence of the tort-feasor, or in both such counties, and if the same is so recorded then such tort-feasor's property, except as to the assets specifically listed in the contract, shall not be subject to any judgment lien as the result of any

2

Garcia Empire, they would recover solely from Garcia Empire's insurer. The case was tried and submitted on August 17, 2017. Judgment was entered in October 2017 in favor of the Desais.

On August 28, before judgment was entered, an amended version of section 537.065 became effective after the legislature repealed and replaced the 2016 statute. The amended statute permitted the same contracts as the 2016 statute but included two notable additional requirements. First, it provided that before creation of a contract, the insurer must be given the opportunity to defend the tortfeasor without reservation and refuse to do so. Second, the amended statute provided that before a judgment may be entered against a tortfeasor after such tortfeasor "has entered into a contract under this section," the insurer must be provided with written notice of the contract and be given the opportunity to intervene as a matter of right.

Seneca filed motions to intervene as a matter of right pursuant to Rule 52.12 and for relief from judgment pursuant to Rule 74.06(b). Seneca argued the circuit court erred in entering judgment without providing it written notice and the opportunity to intervene pursuant to the amended statute. The circuit court overruled Seneca's motions. Seneca appeals.[2]

---

judgment rendered against the tort-feasor, arising out of the transaction for which the contract is entered into.

Section 537.065, RSMo 2016.

[2] After an opinion by the court of appeals, this Court granted transfer. Mo. Const. art. V, sec. 10.

3

**Standard of Review**

The overruling of a motion for leave to intervene as a matter of right pursuant to Rule 52.12(a) will be affirmed unless it is not supported by substantial evidence, is against the weight of evidence, or erroneously declares or applies the law. *State ex rel. Nixon v. Am. Tobacco Co.*, 34 S.W.3d 122, 126 (Mo. banc 2000). Additionally, a circuit court's ruling on a Rule 74.06(b) motion to set aside a judgment is reviewed for abuse of discretion. *Bate v. Greenwich Ins. Co.*, 464 S.W.3d 515, 517 (Mo. banc 2015). But whether a judgment is void is a question of law reviewed *de novo*. *Id.*

**Analysis**

Seneca makes two arguments regarding why the amended statute's requirements of notice and opportunity to intervene should apply here. First, Seneca argues the amended statute was intended to apply to all cases in which judgment had not yet been entered before the effective date, regardless of when the contract was made. In the alternative, Seneca contends the amended statute should operate retroactively to this case because doing so would not violate article I, section 13 of the Missouri Constitution.

### *I. Whether the 2017 Amended Statute Applies to This Case*

The legislature repealed section 537.065, RSMo 2016, and replaced it with an amended statute. The amended statute became effective after the case was tried and submitted but before the circuit court entered judgment. [3] Section 537.065.2, RSMo Supp. 2017, provides in relevant part:

---

[3] The house bill creating the amended statute stated it was "an act to repeal section 537.065, RSMo, and to enact in lieu thereof two *new sections* relating to the settlement of tort claims."

4

> Before a judgment may be entered against any tort-feasor *after such tort-feasor has entered into a contract under this section*, the insurer or insurers shall be provided with written notice of the execution of the contract and shall have thirty days after receipt of such notice to intervene as a matter of right in any pending lawsuit involving the claim for damages.

(Emphasis added). The key issue here is to determine what "under this section" means. Seneca argues the amended statute is a continuation of the 2016 statute and, consequently, the Desais and Garcia Empire's contract was executed "under this section," as provided in the amended statute, despite the amended statute not being in effect at that time. In response, the Desais argue that the amended statute does not apply because the contract was entered into pursuant to the 2016 statute as it was the only statute in effect at the time. According to the Desais, the language in the 2017 amended statute should apply only to those contracts entered into after August 28, 2017 – the date the amended statute went into effect. [4]

---

H.B. 339/714 (emphasis added). In other words, the bill repealed the 2016 statute and replaced it with two new sections, one of which is the amended statute.

[4] As an initial matter, the Desais contend Seneca failed to preserve this argument for appellate review. Generally, when there is no argument in the record concerning an issue or when an issue is not presented to the circuit court, it has not been preserved for appellate review. *In re G.M.G.*, 525 S.W.3d 162, 165 (Mo. App. 2017) (citing *In re J.Y.*, 637 S.W.2d 670, 673 (Mo. banc 1982)); *see also State v. Davis*, 348 S.W.3d 768, 770 (Mo. banc 2011). But circuit courts are presumed to know and apply the law. *State v. Amick*, 462 S.W.3d 413, 415 (Mo. banc 2015). The preservation rules are applied "not to enable the court to avoid the task of review, nor to make preservation of error difficult for the appellant, but, to enable the court – the trial court first, then the appellate court – to define the precise claim made by the defendant." *Id.* In its motion, Seneca argued the amended statute required Seneca be provided with notice and an opportunity to intervene because the amended statute was in effect on the date the judgment was entered. While Seneca did not expressly argue the amended statute applies to this case, in its supplemental memorandum to the circuit court it argued, "Since the judgment at issue was not yet entered when the statute became effective, the statute was applicable and required notice before the judgment could be entered." This argument is essentially the same as what Seneca argues in this point on appeal. Accordingly, the issue was adequately presented to the circuit court and preserved for appellate review.

When determining whether the phrase "under this section" in the amended statute encompasses the 2016 statute, this Court must look to the relevant differences between the two statutes. *State ex rel. Stone v. Vernon Cty. Court*, 53 Mo. 128 (1873) (emphasizing the prior version of a statute and the new version "must accordingly be construed together in arriving at the legislative intent"). This Court then determines whether the amended statute is a continuation of the 2016 statute. *Clark v. Kansas City, St. Louis, & Chi. R.R. Co.*, 118 S.W. 40, 44 (Mo. 1909). "The provisions of any law or statute which is reenacted, amended or revised, *so far as they are the same as those of a prior law*, shall be construed as a continuation of such law and not as a new enactment." Section 1.120, RSMo 2016 (emphasis added).

The amended statute allows for the same type of contracts as the 2016 statute. Both the 2016 statute and the amended statute permit contracts whereby the plaintiff agrees that, in the event of a judgment against the tortfeasor, the plaintiff will collect money solely from the tortfeasor's insurer or other specified assets, rather than directly from the tortfeasor.[5] But the statutes substantively differ, as the amended statute includes

---

[5] With the 2017 amendments in bold and deleted language struck through, section 537.065, RSMo Supp. 2017, provides:

> 1. Any person having an unliquidated claim for damages against a tort-feasor, on account of **personal injuries**, bodily injuries**,** or death, **provided that, such tort-feasor's insurer or indemnitor has the opportunity to defend the tort-feasor without reservation but refuses to do so**, may enter into a contract with such tort-feasor or any insurer ~~in~~ **on** his **or her** behalf or both, whereby, in consideration of the payment of a specified amount, the person asserting the claim agrees that in the event of a judgment against the tort-feasor, neither ~~he~~ **such person** nor any **other** person, firm**,** or corporation claiming by or through him **or her** will levy execution, by garnishment or as otherwise provided by law, except against the specific assets listed in the contract and except against any insurer which insures the legal liability

6

two noteworthy additions. First, the amended statute adds a prerequisite to the execution of a valid contract that did not previously exist. Under the amended statute, a tortfeasor is able to enter into a contract only if the tortfeasor's insurer or indemnitor "had the opportunity to defend the tort-feasor without reservation but refuse[d] to do so." Section 537.065.1, RSMo Supp. 2017. Additionally, the amended statute added the requirement that insurers be given written notice and the opportunity to intervene prior to judgment. Section 537.065.2, RSMo Supp. 2017.

In examining the significance of these additions in the amended statute, this Court's holding in *Clark* is instructive. In *Clark*, this Court held a newly enacted statute

---

of the tort-feasor for such damage and which insurer is not excepted from execution, garnishment or other legal procedure by such contract. Execution or garnishment proceedings in aid thereof shall lie only as to assets of the tort-feasor specifically mentioned in the contract or the insurer or insurers not excluded in such contract. Such contract, when properly acknowledged by the parties thereto, may be recorded in the office of the recorder of deeds in any county where a judgment may be rendered, or in the county of the residence of the tort-feasor, or in both such counties, and if the same is so recorded then such tort-feasor's property, except as to the assets specifically listed in the contract, shall not be subject to any judgment lien as the result of any judgment rendered against the tort-feasor, arising out of the transaction for which the contract is entered into.

**2. Before a judgment may be entered against any tort-feasor after such tort-feasor has entered into a contract under this section, the insurer or insurers shall be provided with written notice of the execution of the contract and shall have thirty days after receipt of such notice to intervene as a matter of right in any pending lawsuit involving the claim for damages.**

**3. The provisions of this section shall apply to any covenant not to execute or any contract to limit recovery to specified assets, regardless of whether it is referred to as a contract under this section.**

**4. Nothing in this section shall be construed to prohibit an insured from bringing a separate action asserting that the insurer acted in bad faith.**

that provided it applied to "any action which shall have been commenced within the time prescribed within *this section*" was a continuation of the statute's prior version. 118 S.W. at 44 (emphasis added). The Court emphasized that "the time prescribed within this section" was the same time prescribed in the previous version of the statute, indicating that "the old law is continued in force in that regard." *Id.* In other words, the phrase "under this section" in the amended statute did not only refer to the amended statute but also included the statute's prior version.

Unlike in *Clark*, the phrase "this section" in the amended statute at issue here does not refer to the statute's prior version. While the amended statute retained much of the 2016 statute's language, the amended statute's added requirements pertain to the meaning of its phrase, "has entered into a contract under this section." Under the 2016 statute, a contract could be created and cases could conclude without any insurer involvement. Indeed, under the 2016 statute it was not a requirement for the insurer to be told the case existed. Conversely, under the amended statute, before a contract can be executed, insurers must have the opportunity to defend the tortfeasor and refuse to do so. In addition, prior to judgment, insurers must be provided with written notice and the opportunity to intervene.

Accordingly, contracts executed under the amended statute have new requirements to be effective compared with those executed under the 2016 statute. While the dissenting opinion is correct that, here, the terms of the contract executed under the 2016 statute remain the same post-amendment, the dissenting opinion disagrees as to the effect of the two substantive changes in the amended statute, which require: (1) the tortfeasor's

8

insurer be given the opportunity to defend without reservation and to refuse to do so for the contract to be binding, and (2) the insurer receive notice and the opportunity to intervene prior to entry of judgment. *See* section 537.065.1-.2, RSMo Supp. 2017. As a result, the amended statute is not a continuation of the prior version pursuant to section 1.120. The Desais and Garcia Empire could not have "entered into a contract" pursuant to a prerequisite and a requirement that was not yet law.

When interpreting a statute, this Court is guided by the legislature's intent, as indicated by the statute's plain language. *State ex rel. Clay Equip. Corp. v. Jensen*, 363 S.W.2d 666, 669 (Mo. banc 1963). This Court must give meaning to every word or phrase in the statute if possible. *State v. Blocker*, 133 S.W.3d 502, 504 (Mo. banc 2004). By using the phrase "has entered into a contract under *this section*," the legislature made clear the new notice and intervention requirements applied to contracts entered into under the amended statute.[6] Here, the contract was entered into prior to the amended statute's enactment, so the amended statute does not apply to this case. The Desais and Garcia Empire did not enter into a contract under "*this section*" – because "this section" and its provisions did not exist in November 2016 when the contract was executed under the 2016 statute.[7] Further, the amended statute was not yet effective at the time the case was

---

[6] In other words, the triggering date for purposes of this statutory construction analysis is the date on which the contract was entered. If the Desais and Garcia Empire's contract had been entered into after August 28, the amended statute would apply to this case.

[7] Seneca argues that the phrase "has entered" in the amended statute indicates the legislature's intent that the statute apply to pending cases involving contracts previously entered under the 2016 statute. But "[w]hen determining the legislative intent of a statute, no portion of the statute is read in isolation, but rather the portions are read in context to harmonize all of the statute's provisions." *BASF Corp. v. Dir. of Revenue*, 392 S.W.3d 438, 444 (Mo. banc 2012). The amended statute's phrase in its entirety indicates the statute applies to all cases in which a tort-

9

tried and submitted. Seneca, however, was aware of the lawsuit but did not attempt to intervene. Because the contract was entered into under the 2016 statute, the amended statute was not applicable. As a result, the contract remains effective pursuant to the savings clause.[8]

## II. Whether the 2017 Amended Statute Applies Retroactively to This Case

Alternatively, Seneca argues the amended statute is procedural and, accordingly, can apply retroactively to the instant case without violating article I, section 13 of the Missouri Constitution. This argument is purely academic in light of this Court's holding, above, that the legislature did not intend for the statute to apply to contracts entered into prior to its effective date.

Consequently, this Court need not engage in an analysis to determine whether the amended statute is substantive or procedural because even if it were determined that it is procedural – as Seneca argues – the legislature made clear with its amendment that it does not apply to contracts entered into prior to August 28. Specifically, the legislature

---

feasor "has entered into a contract under this section." For the reasons stated, "a contract under this section" cannot refer to a contract entered into pursuant to the 2016 statute because the amended statute is not a continuation of the 2016 statute in this respect. *See Clark*, 118 S.W. at 44.

[8] The savings clause provides:

> [T]he repeal of any statutory provision does not affect any act done or right accrued or established in any proceeding ... had or commenced in any civil case previous to the time when the repeal takes effect; but every such act, right and proceeding remains as valid and effectual as if the provisions so repealed had remained in force.

Section 1.170, RSMo 2016. Because the legislature made clear the amended statute would apply only to contracts entered into after it went into effect, it is presumed the savings clause is incorporated into the statute. *See Arie v. Interherm, Inc.*, 648 S.W.2d 142, 159 (Mo. App. 1983).

10

limited the application of the 2017 amendment to contracts "entered into … under this section," which means only those contracts entered into after the amendment took effect. As a result, the requirements of the amended statute do not apply to the contract entered into by the Desais and Garcia Empire because that contract was formed before the 2017 amendments took effect.

## Conclusion

Because the Desais and Garcia Empire entered into a contract prior to the effective date of the amended statute, the circuit court did not err in overruling Seneca's motions to intervene and to set aside judgment.[9] The judgment is affirmed.

_____
Mary R. Russell, Judge

Fischer, C.J., Wilson, and Powell, JJ., concur;
Stith, J., dissents in part and in result in
separate opinion; Draper and Breckenridge, JJ.,
concur in opinion of Stith, J.

---

[9] Seneca also argues the circuit court erred in overruling its motion for relief from judgment pursuant to Rule 74.06(b). According to Seneca, the circuit court's judgment is void because Seneca did not receive notice or the opportunity to intervene pursuant to the amended statute. In response, the Desais argue Seneca does not have standing to seek relief from the circuit court's judgment because Seneca was not a party to the judgment. Because this Court concludes that the amended statute does not apply, relief under this rule is not available.

11



# SUPREME COURT OF MISSOURI
## en banc

NEIL DESAI, M.D., et al., )
)
     Respondents, )
)
v. ) SC97361
)
SENECA SPECIALTY INSURANCE )
COMPANY, )
)
     Appellant. )

### DISSENTING IN PART AND IN RESULT

I agree with the majority opinion that Seneca's claim that the statute is unconstitutionally retrospective in operation is without merit. I also agree that Seneca's right to intervene in the Desais' suit is determined by section 1.120, RSMo 2016, which states in relevant part: "The provisions of any law or statute which is reenacted, amended or revised, *so far as they are the same as those of a prior law*, shall be construed as a continuation of such law and not as a new enactment." I disagree, however, with the majority opinion's application of section 1.120 to the portion of section 537.065 as amended in 2017, which deals with agreements entered into under that section.

Missouri long has permitted injured persons to enter into agreements under section 537.065 pursuant to which, in return for a specified sum, the injured person agrees to limit

recovery to the assets of the insurer:

> Any person having an unliquidated claim for damages against a tort-feasor … may enter into a contract with such tort-feasor … whereby, in consideration of the payment of a specified amount, the person asserting the claim agrees that in the event of a judgment against the tort-feasor, neither he nor any person … will levy … except against the specific assets listed in the contract and except against any insurer which insures the legal liability of the tort-feasor ….

*§ 537.065, RSMo 2016.*

That is just what the injured party and the tort-feasor did in regard to the accident that forms the basis of the underlying suit: in November 2016, they entered into a contract under which the Desais agreed to limit recovery to the assets of the tort-feasor's insurance policy.

The August 2017 amendment to section 537.065 repealed section 537.065 and replaced it with an amended version of section 537.065. That amendment added multiple important provisions to section 537.065, two of which are relevant here. The first provides that an injured person may enter into a contract with the tort-feasor under section 537.065 only if the "tort-feasor's insurer or indemnitor has the opportunity to defend the tort-feasor without reservation but refuses to do so." *§ 537.065., RSMo Supp. 2017.*

This new provision requiring the injured person to give the insurer an opportunity to defend without reservation of rights cannot apply to the contract at issue here, for that contract already was signed and in effect prior to the effective date of the addition of this new requirement in August 2017. To apply that new requirement to the contract that forms the basis of this action would violate section 1.170, RSMo 2016, which provides:

2

> The repeal of any statutory provision does not affect any act done or right accrued or established in any proceeding ... had or commenced in any civil case previous to the time when the repeal takes effect; but every such act, right and proceeding remains as valid and effectual as if the provisions so repealed had remained in force.

Because the section 537.065 agreement was entered into prior to the effective date of the amended section 537.065, which went into effect in August 2017, the addition of an "opportunity to defend" requirement does not apply to it.

Indeed, to allow a subsequent amendment to impair a pre-existing contract would violate article I, section 13 of the Missouri Constitution, which prohibits the enactment of laws "impairing the obligation of contracts." The amendment requiring an insurer to be given an "opportunity to defend," therefore, cannot apply to the section 537.065 contract in this case as it was signed prior to the amendment's effective date.

A similar prospective limitation applies to the second relevant 2017 addition to section 537.065 *when applied to judgments already entered.* It added a second section stating, in relevant part:

> *Before a judgment may be entered* against any tort-feasor after such tort-feasor *has entered into a contract under this section,* the insurer or insurers shall be provided with written notice of the execution of the contract and shall have thirty days after receipt of such notice to intervene as a matter of right in any pending lawsuit involving the claim for damages.

*§ 537.065.2, RSMo Supp. 2017* (emphasis added). This new provision adds a requirement which must be met *before a judgment may be entered.* When a judgment already has been entered, then, the new provision cannot apply for, as just noted, section 1.170 states that repeal and reenactment cannot affect any act already done in any proceeding and "every such act, right and proceeding remains as valid and effectual as if the provisions so repealed

3

had remained in force." Similarly, section 1.180, RSMo 2016 provides:

> No action or plea pending at the time any statutory provisions are repealed shall be affected by the repeal; but the same shall proceed, in all respects, as if the statutory provision had not been repealed, except that all proceedings had after the repeal becomes effective are governed by procedural rules and laws then in effect, insofar as they are applicable.

A judgment entered remains a judgment entered.

This brings us to the key question in this case – how did the legislature intend the 2017 revisions to apply where, as here, a contract already had been entered into prior to the effective date of the 2017 revisions but a judgment had not yet been entered as of that date. The majority opinion finds guidance in the fact the statute provides that its revisions apply when a "tort-feasor has entered into a contract *under this section.*" *§ 537.065.2, RSMo Supp. 2017* (emphasis added). That makes the determinative question whether "under this section" as used in section 537.065 means only an agreement entered into under section 537.065 as revised, or also an agreement entered into under section 537.065 prior to the 2017 amendment.

As the majority opinion correctly notes, this is not a novel issue. Prior cases have held that one must look to the relevant differences between the older and newer versions of a statute in determining whether the phrase "under this section" in an amended statute encompasses prior versions of the statute. This follows from the requirement of section 1.120 that "[t]he provisions of any law or statute which is reenacted, amended or revised, *so far as they are the same as those of a prior law, shall be construed as a continuation of such law and not as a new enactment.*" (Emphasis added). If the language in the older and newer versions of the statutes is the same in relevant respects, under section 1.120, it is a

4

continuation of the 2016 statute. *Clark v. Kan. City, St. Louis, & Chi. R.R. Co., 118 S.W. 40, 44 (Mo. 1909).* If the language is new or different in relevant respects, then "in this section" will be interpreted to refer to only the revised statute. *Id.; Ray v. State, 835 S.W.2d 338, 339 (Mo. App. 1992).*

It is here that my analysis departs from that of the majority opinion. That opinion concludes that because the 2017 version of section 537.065 contains two new substantive provisions, the new statute is not a continuation of the older version and so the phrase "under this section" must mean the contract must be entered into under the new statute rather than the old one.[1]

But, the majority opinion thereby errs in treating section 537.065 as a whole, concluding the entire revised statute is a new enactment rather than a continuation simply because the two new provisions of the statute are not continuations. That is a

---

[1] The majority opinion reasons:

> While the amended statute retained much of the 2016 statute's language, the amended statute's added requirements pertain to the meaning of its phrase, "has entered into a contract under this section." Under the 2016 statute, a contract could be created and cases could conclude without any insurer involvement. Indeed, under the 2016 statute it was not a requirement for the insurer to be told of the case's existence. Conversely, under the amended statute, prior to the execution of a contract, insurers must have the opportunity to defend the tort-feasor and refuse to do so. In addition, prior to judgment, insurers must be provided with written notice and the opportunity to intervene. Accordingly, contracts entered into under the amended statute have new requirements and different implications than those entered into under the 2016 statute. As a result, the amended statute is not a continuation of the 2016 statute because the Desais and Garcia Empire could not have "entered into a contract" pursuant to a prerequisite and requirements that did not yet exist.

*Slip op. at 8.*

5

misapplication of section 1.120. Section 1.120 does not state that if any portion of a statute is revised, the entire statute shall be treated as a new enactment. To the contrary, section 1.120 expressly provides, "*so far as [new provisions] are the same as those of a prior law, [they] shall be construed as a continuation of such law and not as a new enactment.*" (Emphasis added). In other words, under section 1.120, only new provisions are treated as new, while those provisions of a revised statute that "are the same as those of a prior law" are treated as a continuation of the same section.

The "opportunity to defend" provision discussed above is a new provision, but it simply acts as a condition precedent to the contract; it does not affect the terms of a contract entered into under section 537.065. Similarly, the "prior to entry of judgment" provision discussed above simply affects when judgment may be entered; it does not affect the terms of a contract entered into under section 537.065. Indeed, the majority opinion itself recognizes the 2017 revisions do not affect the portions of section 537.065 governing the terms of a contract entered into under that section.[2] As the majority opinion puts it:

> The amended statute allows for the same type of contracts as the 2016 statute. Both the 2016 statute and the amended statute permit contracts whereby the plaintiff agrees that in the event of a judgment against the tort-feasor, the plaintiff will collect money solely from the tort-feasor's insurer or other specified assets, rather than directly from the tort-feasor.

---

[2] Under both the pre-2017 and 2017 versions of the statute, the injured person:

> may enter into a contract with such tort-feasor or any insurer ~~in~~ **on** his **or her** behalf or both, whereby, in consideration of the payment of a specified amount, the person asserting the claim agrees that in the event of a judgment against the tort-feasor, neither ~~he~~ **such person** nor any **other** person, firm**,** or corporation claiming by or through him **or her** will levy execution … except against … any insurer which insures the legal liability of the tort-feasor ….

*Id.* (edits in 2017 amendments shown by emphasis or striking through).

6

*Slip op. at 6.*

But this means the majority opinion errs in concluding "under this section" must refer to only contracts entered into under the 2017 revision to section 537.065. To the contrary, because the portions of section 537.065 dealing with contracts entered into under it are the same under both the former and the 2017 versions of the statute, under section 1.120, the contract provisions "are the same as those of a prior law, [so they] shall be construed as a continuation of such law and not as a new enactment." In other words, "under this section" refers both to the 2017 and prior versions of section 537.065 because the relevant provisions "are the same" under both current and prior law and so they are a continuation, not a new enactment.

This means any judgment entered into "under this section" includes judgments entered into under either the 2017 or the earlier versions of section 537.065. Here, the judgment was entered on October 2, 2017, after the effective date of the 2017 revisions. The notice requirements of those new provisions, therefore, applied to that judgment pursuant to section 1.180. The notice provision states:

> Before a judgment may be entered against any tort-feasor after such tort-feasor has entered into a contract under this section, the insurer or insurers shall be provided with written notice of the execution of the contract and shall have thirty days after receipt of such notice to intervene as a matter of right in any pending lawsuit involving the claim for damages.

*§ 537.065.2, RSMo Supp. 2017.*

Despite this provision, the circuit court below entered judgment on October 2, 2017, without determining whether the insurer had been provided with written notice of the execution of the contract and had 30 days thereafter in which to intervene. Seneca moved

7

to intervene and to set aside the judgment on October 31, 2017, and the court ruled on November 1, 2017, which is within the 30 day period during which the trial court retained control over its judgment. *Rule 74.06(b); Rule 75.01.* [3]

Seneca now asks this Court to reverse the circuit court's overruling of its motion to intervene and of its motion to set aside the judgment and to order that both motions be sustained. But it is not clear on this record whether Seneca is entitled to take advantage of the intervention provision set out in the 2017 amendment to section 537.065. That provision does not state that Seneca has 30 days from entry of judgment in which to intervene, but that "the insurer or insurers shall be provided with written notice of the execution of the contract and shall have *thirty days after receipt of such notice* to intervene as a matter of right in any pending lawsuit involving the claim for damages." *§ 537.065.2, RSMo Supp. 2017* (emphasis added).

While Seneca argues it had no notice of the lawsuit or the section 537.065 agreement until after judgment was entered, the Desais disagree. They say they gave Seneca notice of their intent to enter into a section 537.065 agreement and to obtain a section 537.065 judgment in light of Seneca's refusal to defend. They further argue that, because Seneca had actual notice of the agreement, it cannot complain it did not get some other form of written notice, citing *Missouri Highway & Transportation Commission v. Myers, 785 S.W.2d 70, 75 (Mo. banc 1990)*. They also argue Seneca failed to support its motion to set aside with evidence necessary to support such a motion.

---

[3] This Court is not called on to decide and, therefore, does not reach the issue of who must give that notice or the effect of failure to give notice within 30 days after judgment.

8

The revisions to section 537.065 simply give an insurer the right to written notice and an opportunity to intervene. The revisions to section 537.065 do not purport to give an insurer an automatic right to set aside a judgment entered or any other rights beyond what any intervenor would have. As a party seeking intervention as of right after judgment already had been entered, Seneca had a right to argue its motion to intervene was timely and, if it was timely, the circuit court should set aside the judgment due to the alleged failure to comply with the notice requirement of the 2017 version of section 537.065. The merits of such a motion, or any other relief sought, is governed by the law normally applicable to such motions and can be addressed by the circuit court on remand.

For these reasons, I would reverse the judgment below and remand to the circuit court with directions to consider whether Seneca's motion to intervene was timely filed within 30 days of when it received appropriate notice of the section 537.065 agreement. If the motion was timely filed, I would direct the circuit court to consider whether sufficient grounds were shown for sustaining the motion to set aside the judgment and for such other action as the circuit court would deem appropriate in light of the evidence, the law, and this opinion.

_____
LAURA DENVIR STITH, JUDGE

9